LEAVITT THAXTER, Administrator *vs.* LAWRENCE GRINNELL
& others.

The guardian of the Chappequiddic Indians consented that G., one of the tribe, might ship for a whaling voyage, and also authorized a third person to furnish G. with an outfit for a voyage, but not for any particular voyage. That person furnished G. with supplies which he spent or otherwise disposed of, and he afterwards shipped on a whaling voyage, the owners of the ship not knowing that he was a Chappequiddic Indian, until after the ship had sailed and after they had advanced to him the ful amount of his lay. G. died on the voyage, and his administrator brought an action against the owners of the ship to recover the amount of G.'s lay ; relying on the provisions of *St.* 1827, *c.* 114, "for the better regulation &c. of the Indians, &c. in Dukes County." *Held,* that the action could not be maintained.

ASSUMPSIT by the administrator of the estate of Samuel P. Goodridge, an Indian of the Chappequiddic tribe, against the owners of the whale-ship Euphrates, for the proceeds of a voyage made by the intestate, as a seaman in said ship.

From the report of the chief justice, before whom the case was tried at Barnstable, it appeared that the gross amount of the intestate's lay was $ 382·13 ; but that the defendants had advanced to him for his outfit, and paid to him, and for his account, before he commenced the voyage, and upon the voyage, sums exceeding that amount. The guardian of the Chappequiddic Indians had authorized a Mr. Coffin, of Edgartown, to supply the intestate with an outfit for a whaling voyage, but not for any particular voyage, and said Coffin had delivered supplies to him accordingly. The intestate afterwards went to New Bedford, not then having any supplies for his outfit, and shipped in the defendants' vessel, the Euphrates, and requested them to furnish his outfit, as an advance upon his lay, which they did. Further advances were made to the intestate, during the voyage, by the officers of the ship.

The defendants had no express notice that the intestate was a Chappequiddic Indian, until after the vessel had sailed, when such notice was given them by the guardian, by letter dated May 23d, 1834 ; and afterwards, on the 10th of April, 1835, the guardian called on one of the defendants, who was also agent for the others, and informed him that they must account for the intestate's lay with him, (the guardian,) — and the defendants

then informed the guardian that they had furnished an outfit and made advances to the intestate, to a large amount, before they had any notice that he was a Chappequiddic Indian.

It was admitted by the plaintiff, that advances were made to Goodridge, the intestate, by the defendants, in such a manner as would bind him, if he were competent to act for himself; and that the guardian consented that the intestate might go to New Bedford, and ship for a whaling voyage. But neither the guardian, nor the aforesaid Mr. Coffin, went with the intestate Before the intestate shipped for the voyage, he had spent, or in some way disposed of, the outfit furnished by said Coffin ; and he died on the voyage.

The question, on these facts, was, whether Goodridge, being one of the Chappequiddic tribe of Indians, and recognized as such, was competent to act for himself ; or whether the supplies and outfit furnished to him by the defendants, before sailing, and by the officers during the voyage, were made rightfully, or in their own wrong.

A verdict was taken for the plaintiff, by consent, subject to the opinion of the whole court on the above question reserved. Judgment to be rendered on the verdict, if the plaintiff, as administrator, is entitled to recover ; otherwise, the verdict to be set aside and the plaintiff to become nonsuit.

*Eliot*, for the defendants.

*Beal*, for the plaintiff.

PUTNAM, J.   The *St.* of 1827, *c.* 114, was made " for the better regulation, instruction and government of the Indians and people of color in the county of Dukes County."   They are placed under guardianship, and their guardian is invested with authority generally to manage their concerns.   He may, and in deed is enjoined, among other things, to institute in his own name, or in the name of any Indian or person of color, any action for the recovery of any debt due, or other property belonging to said Indians, or people of color, or for any fraud or injury committed upon them or their property.

The provisions, which have been adopted by the legislature, in respect to this improvident race of men, have been dictated by a single regard to their welfare.   The guardian is empowered

to grant licenses to such of them as shall, by industry, sobriety and correct conduct, entitle themselves to the privilege, to make contracts generally ; and, in particular, to purchase real estate.

And by the 8th article of § 4, the guardian may reserve such part of the wages or profits of any voyage or voyages of the Indians and people of color, for the support of their families, as he may think proper ; and the master or owners are held to the due payment of any sum so reserved, and no payment to said Indians or persons of color, by such owners or masters, shall be a bar to a recovery of the sums so reserved.

And by § 7, it is provided, that from and after the passing of that act, (10th of March, 1828,) no promise made, nor contract entered into, by any of said Indians or people of color, shall be valid in law, unless the same shall be made or entered into with the *written consent of said guardian* ; and no action thereafter brought upon any promise or contract, made or entered into without *such written consent*, shall be sustained in any court of law ; nor shall any action, in which any of said Indians or people of color shall be plaintiffs, be sustained, unless the original writ be indorsed by said guardian.

The plaintiff has brought this action as the administrator of Samuel P. Goodridge, one of the Chappequiddic Indians, for services by him performed in the ship of the defendants, upon a whaling voyage in which the gross amount of his lay was $ 382·13.

If the action were brought for the services of an individual competent to contract, the defendants have a good defence ; for they have overpaid the amount of the lay. Now the defendants had no notice that Goodridge was under any legal disability to contract, until after they had overpaid him. If, after they had notice, they had paid any sum which was in their hands, and which was justly due to the Indian, they would be liable, unquestionably, to repay it. But such is not the fact. They contracted, for aught that appears, with an able and competent man ; and they have conducted themselves accordingly. It is not objected that in point of age Goodridge was incompetent ; but it is argued for the plaintiff, that the defendants were bound to take

notice, at their peril, that Goodridge was one of the Chappe-
quiddic tribe, and therefore that the payment to him was in their
own wrong.    They were indeed bound to take notice of the
statute from which we have so largely extracted.    That was a
public act.    But we think they were not bound to know that
every Indian or person of color, who should apply for service in
their ships, belonged to that particular tribe of Indians.    The
notice of *that* fact was more within the knowledge of the plain-
tiff, than it was in the knowledge or means of knowledge of the
defendants.

Besides, it is found that the guardian authorized the Indian to
go to New Bedford and procure a whaling voyage ; and there is
no suggestion that the Indian was directed to disclose to the
defendants or any employer the inability under which he was
placed by the statute.    And if he were so directed, there is no
evidence that he obeyed the direction.

If the relation of father and son had existed, and the son was
apparently of full age, and had the father's permission to ship as
a seaman for a voyage, and in fact the son was within age, yet a
payment to the son, under such circumstances, could not be re-
sisted or controverted by the father.    If the law were otherwise,
the grossest frauds would or might be practised with impunity.
When it is provided by the statute, that a payment to the ward
shall be no bar to a recovery by the guardian, it is to be under-
stood that the party, making such payment, knows the existing
disability of the party to whom the payment is made.

It may be admitted that the relation of guardian and ward
existed, and that the defendants could have had no legal remedy
to compel the ward to perform the voyage.    Yet it would by no
means from thence follow, that when he had performed it, and
the defendants had honestly paid for the services, the guardian
should compel a second payment.    It was the guardian who
gave the credit, and enabled the ward to impose upon his em-
ployers.    The defendants have been in no fault.    A seaman,
apparently in every respect competent to perform the voyage,
made an application for the service, by the direction of his guar-
dian ; and he being destitute, the defendants made the customary

Thaxter, Administrator v. Grinnell & others.

outfits, advances and payments, without any notice of any disability on the part of the applicant. It was the guardian who confided, notwithstanding the statute had declared that the party was not trustworthy. The defendants had no knowledge that the ward had received the outfit from the guardian and had squandered the money. It was in the power of the guardian to have prevented the difficulty. He might, by reasonable care, have made the contract himself, or by a competent agent. It was intended by the statute, that the improvident Indian should not be trusted in this behalf. Such a loss as has happened was one which was foreseen by the legislature as one which would be likely to happen, and without doubt was among the reasons which induced the passage of the law that subjected the persons and property of the tribe to the control of a guardian.

It is a familiar and just principle of law, that the party who has occasioned a loss, by reason of his carelessness, shall bear it, rather than a man upon whom it has fallen, who has been guilty of no neglect.

We are aware that the exercise of the power of guardianship involves a delicate trust. If too much caution and suspicion be used, the Indians would be discouraged, and an adverse feeling would grow up between the parties, which would tend greatly to frustrate the benevolent intent of the legislature. Some trust is to be reposed, in order that, by good conduct, the Indians may be allowed to exercise certain privileges, and among others, "the privilege to make contracts generally." And it is not strange that the guardian, from being governed by the best disposition to promote the welfare of his wards, may confide too much; and whenever such an event shall arise, he must be taught to use more discrimination for the future; but, surely he is not to visit the loss, occasioned by his own mistakes, upon others who have not been deficient in care or honesty.

We determine the case upon its merits, and not upon any of the technical objections as to form, which were urged by the defendants' counsel, in addition to his argument on the merits.

*Verdict set aside and plaintiff nonsuit.*